UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

UNITED STATES OF AMERICA )
)
v. ) No. 2:13-CR-48
)
MAMADOU BAH )
ALLAN MARCUS HARVEY )

**REPORT AND RECOMMENDATION**

These defendants are charged with producing and trafficking in "counterfeit access devices," i.e., counterfeit credit, debit, and gift cards. The cards were discovered and seized by officers of the Morristown Police Department on May 23, 2013, during a search of the vehicle driven by the defendant Bah, and in which the defendant Harvey was riding as a passenger. Each defendant has filed a motion to suppress evidence of the counterfeit credit and gift cards, and any other evidence that flowed from the seizure of those fraudulent cards, (Docs. 20 and 21). A hearing was held on August 5, 2013. These motions have been referred to the magistrate judge pursuant to the standing order of this Court and 28 U.S.C. § 636.

After hearing the testimony of the witnesses and considering the exhibits, the court finds the facts to be:

On May 23, 2013, Officer Todd Davidson of the Morristown Police Department was operating a radar unit on US Highway 25-E, northbound, in the construction zone at Walters

State Community College, Wal-Mart, and the College Square Mall. It is an extremely hazardous and heavily-traveled area, with narrow, curvy lanes flanked by concrete barricades. The speed limit is 35 miles per hour.

Officer Davidson clocked a white Nissan Altima at 56 miles per hour. He pulled out behind the Altima and activated his blue lights. The Altima turned onto the ramp that provides an exit from 25-E North onto East Morris Boulevard, also a very heavily traveled main thoroughfare through Morristown, and stopped on that ramp. The entire traffic stop was recorded on a video camera mounted in the police car; it is a very good recording.

Officer Davidson noted that the car bore Florida tags. He approached the driver and told the driver – now known to be the defendant Bah – that he had been clocked at 56 miles per hour in a 35-mile-per-hour zone. He asked Bah to produce his drivers license, and registration or rental agreement. Bah handed Officer Davidson a New York drivers license and a copy of a Hertz rental car agreement.[1] The rental contract reflected that Bah leased the vehicle from Hertz in the state of New Jersey. It recited that there was no fee for an additional driver, meaning that Bah was the only authorized driver.

Officer Davidson walked back to his cruiser and relayed to his dispatcher the relevant information on Bah's New York drivers license. Officer Davidson, of course, was parked directly behind the Altima. As he called in Bah's drivers license information to his dispatcher and then awaited the results of his inquiry, he could easily see into the passenger

---

[1] Ex. 1.

2

compartment of the Altima. The passenger, defendant Harvey, was in constant motion, moving from side to side, twisting and turning; his head would drop from time to time. The movements were so constant, so extensive, and so lengthy, it immediately seized the attention of this magistrate judge as the video was viewed. The driver, on the other hand, never made any movements at all, at least any that were discernable on the video.

Officer Davidson testified that Harvey's frenetic movements not only caught his attention, they worried him. After watching the video, the court appreciates why Officer Davidson was concerned. Harvey did not merely shift his position, or turn his head now and then; he moved constantly, and clearly was doing *something*. Officer Davidson became concerned that Harvey might have a gun, and that fear was reasonable.

The dispatcher finally reported that Bah's New York drivers license was suspended.

Because Officer Davidson had reasonable concerns that one or both occupants of the Altima might be armed, he called for assistance. He can be heard on the recording talking on his cell phone to a fellow officer, Derrick Johnson. Officer Davidson told Johnson to pull in behind him when he arrived, and to talk to him before approaching defendant's car. When Johnson arrived, Officer Davidson filled him in quickly on what he believed he faced – a driver whose license was suspended and whom he intended to arrest, and a passenger who was acting extremely "hinky," either of whom might be armed.

Officer Davidson then walked to the driver's side of the Altima, while Johnson walked to the passenger window. Officer Davidson instructed the driver, Bah, to get out of his car and walk to the back of it. Officer Davidson told Bah that he was being arrested for

3

driving on a suspended license.[2] The Morristown Police Department has a policy regarding drivers who are stopped for a moving violating and whose drivers license has been suspended or revoked: they are to be arrested.[3] Bah was ordered out of the car, and he was handcuffed. Officer Davidson also performed a pat-down search of Bah's person, finding only a small amount of cash in his pocket, as well as a wallet. Although Officer Davidson removed defendant's wallet, he did not look into it.

As all this was occurring, Officer Johnson stood outside the vehicle, slightly behind the passenger window, carefully watching Harvey as he remained seated in the car. After Bah was secured, Officer Johnson instructed Harvey to get out of the car and to stand to one side. Harvey also was asked to produce identification, and he too produced a drivers license from another state.[4] As it turned out, Harvey's license also was suspended.

Officer Davidson began to search the Altima, and the reason for that search is a critical issue in this case. Defendants argue that Officer Davidson undertook to search the Altima as an "incident to arrest," and they point to Officer Davidson's arrest report[5] to support that argument. The report indicates that the vehicle was searched "Incident to Arrest

---

[2]Bah can be heard on the recording as expressing surprise to Officer Davidson that his license was suspended. His attorney at the hearing suggested that he did not know his drivers license was suspended. Whether Bah knew his license was suspended is of no legal significance.

[3]Ex. 2, General Order 500.49 of the Morristown Police Department, ¶ A(4).

[4]The magistrate judge neglected to make a note of the state which issued Harvey's license. It is of no consequence.

[5]Ex. 13.

4

(Met Arizona V. Gant Req.)"[6] Defendants argue that this language indicates that Officer Davidson undertook to justify his warrantless search of the car as incidental to Bah's arrest. If that is so, then the search of the vehicle was violative of the Fourth Amendment under the relatively recent Supreme Court ruling in *Arizona v. Gant*, 556 U.S. 332 (2009 ). Officer Davidson, however, emphatically testified that he searched the Altima as a necessary and required prelude to its towing and ultimate impoundment as required by another General Order, 500.51, ¶ 6 of the City of Morristown:

> 6. Towing Alternatives
>
> a. On occasion, officers encounter situations where vehicles need to be removed from their present location, and the vehicle(s) are in a condition that allows them to be driven, rather than towed. Officers shall observe the following guidelines as alternatives to towing vehicles:
>
>     1) If a person is placed under arrest after being removed from a vehicle that is operational, officers shall offer as an alternative, the following:
>
>         a) Leaving the vehicle parked legally in a non-hazardous location and locked/secured.
>
>         b) Releasing the vehicle to a friend or relatives, providing they can respond within a reasonable amount of time (approximately 20 minutes), and that individual is willing to be responsible for the vehicle's safekeeping.[7]

If a vehicle is towed, another General Order provides for an inventory search.

> • If an officer has a lawful justification to impound an automobile, the officer may conduct an inventory of the contents of the vehicle and

---

[6] Presumed interpretation: "The search met the requirements of *Arizona v. Gant*."

[7] Ex. 3.

> all containers therein, pursuant to department policy. Any contraband or evidence observed during this inventory may be seized and should be admissible in court. The rationale for the inventory is (1) to protect the owner's property, (2) to protect the police from potential danger due to the contents of the vehicle, and (3) the protect the police from false allegations of theft.

General Order 200.04B, ¶ I.1.a., "bullet five."[8]

Officer Johnson corroborated Officer Davidson's testimony regarding the basis of his search. Officer Davidson is believed, as is Officer Johnson. Officer Davidson testified that the Altima had to be towed and impounded because:

(1) Bah was under arrest. For obvious reasons, he could not drive the car.

(2) In any event, Bah did not have a valid drivers license;

(3) No one other than Bah was an authorized driver under the Hertz rental contract, and the officers could not unilaterally amend the contract to allow someone else to drive the car;

(4) Harvey could not drive the vehicle because he was not an authorized driver and his license also was suspended; and

(5) both men were from New York and obviously had no "friends or relatives" in the Morristown area.[9]

Defendants' argument that Officer Davidson's true motive was to search the vehicle for evidence of a crime, and not merely to inventory it prior to its towing and impoundment,

---

[8] Ex. 4.

[9] If they did, they introduced no evidence in that regard.

is rejected. Officer Davidson's testimony regarding his motivation in performing a search of the car is supported by the physical facts, all of which are listed above. The car simply could not stay where it was; it magnified an already hazardous traffic situation. It had to be moved. And Bah could not move it, and neither could Harvey. There were no friends or relatives in the area to move it.

The government has a valid interest in protecting an owner's impounded vehicle: protecting the police (and the towing company) from danger, and protecting the police and towing company from false claims for lost or stolen property claimed to have been within the impounded vehicle. This legitimate government interest has been recognized by the Supreme Court as carving out an exception for the Fourth Amendment's requirement for a warrant. *See, e.g., Florida v. Wells*, 495 U.S. 1 (1990); *Colorado v. Bertine*, 479 U.S. 367 (1987); *South Dakota v. Opperman*, 428 U.S. 364 (1976). Notwithstanding that no warrant is required for an inventory search, it nevertheless must be conducted to a procedure or protocol of the police or agency which orders the towing or impoundment. *Id*.

Officer Davidson testified repeatedly that his primary focus in conducting an inventory search was to look for weapons. Harvey's strange actions in the car raised a reasonable suspicion that there were guns in the car, and Officer Davidson was concerned about leaving weapons in an impounded car which could be stolen, and used, by anyone.

Officer Davidson also called a K-9 officer to walk his drug dog around the car. Officer Davidson testified he requested that this be done because the vehicle was a rental car. If the car had drugs concealed within it, subsequent renters of the car could be caused a great

7

deal of trouble. If the car had been owned by Bah, walking a drug dog around it would suggest that Officer Davidson was motivated to search for evidence of a crime. But this was a rental car. Officer Davidson's explanation for requesting the drug dog walk-around makes sense, and is believed.

This was a valid inventory search to the necessary towing and impoundment of the vehicle, and it was in no way a pretense to search for evidence of contraband.

One other argument of the defendants must be addressed: that the towing and impoundment of the vehicle was unnecessary and thus in violation of the police department's towing policy because there is a Hertz car rental office in Morristown, and Officer Davidson should have called that office to retrieve the automobile but did not.

The investigator for Bah's attorney interviewed the manager of the Hertz agency in Morristown. Rather than subpoenaing the Hertz manager as a witness, defense counsel elected to call the investigator as a witness to introduce admittedly hearsay evidence of the manager's statements. The Investigator, Brian Hackett, testified that the manager told him that, had he been called by the police department, he or someone on his behalf would have come to the scene and retrieved the vehicle.

Rule 104(a) of the Federal Rules of Evidence provides that the court must decide any preliminary question regarding the admissibility of evidence and, in so deciding, "the court is not bound by evidence rules." Presumably, this potentially applies to Rule 801 of the Rules of Evidence. Respectfully, this is a bizarre rule, especially in the context of a suppression hearing which often is the *effective* resolution of a criminal prosecution.

8

Investigator Hackett's credibility is not questioned at all. But the situation illustrates the inherent problem with introducing hearsay evidence. Counsel for the United States was denied any opportunity to cross examine the *real* witness, the Hertz manager. Questions and answers to questions generate further questions, further answers, and usually more facts. As questioning progresses, answers may change, or at least be qualified. But assuming that the manager would have testified to no more and to no less than related by Investigator Hackett, it makes no difference.

Investigator Hackett testified that the Hertz manager told him that the Altima vehicle was officially listed as "missing" as far as Hertz was concerned, and the first notification that the Hertz corporation had regarding this car was Mr. Hackett's conversation with the manager. Assuming the manager "testified" correctly to Investigator Hackett and would not have qualified or explained his answer if examined in court, the violation of ¶ 5 of General Order 500.51 by Officer Davidson has no Fourth Amendment implications.

The Morristown Police Department has a written procedure regarding notification to an owner of a vehicle which is to be – or has been - towed:

> 5. Notification of Owner
>
> a. The owners and/or operators of vehicles towed by the Morristown Police Department shall be notified of the removal/tow, advising them of the vehicle's description, and the name and location of the wrecker company involved. Notification shall be made as follows:
>
> 1) If the owner/operator is present at the time of removal/tow-

9

in, they shall be given a copy of the Vehicle Impoundment Form.

      2) If the owner/operator is not present at the time of the tow-in, a copy of the Vehicle Impoundment Form shall be delivered to them by the officer, or by registered U.S. mail, as soon as possible following the removal/tow-in. If the vehicle has been removed/towed as an abandoned vehicle, the notice shall be delivered by registered mail, and in accordance with Tenn. Code Ann. 55-16-105, and City Code 15-13-1313.

      3) Records of notifications and attempts shall be noted on the original <u>white</u> copy of the Vehicle Impoundment Form. Notification attempts shall be noted in the remarks section, along with the registered mail receipt number.

      4) Officers shall make all reasonable attempts to locate and notify the owner/operator prior to removal/towing if they are not present.

That General Order is less than a sterling example of consistency. Paragraph (a) clearly contemplates notification to the owner *after* the vehicle has been towed: "The owners and/or operators of vehicles *towed* . . . shall be *notified* of the removal/tow . . . ," at which time the inventory search already would have been performed. But subparagraph (4) says that the officers should "make all reasonable attempts to locate and notify the owner "prior to removal/towing . . ," which necessarily would be prior to the inventory search.

Whether the department's policy requires notification to an owner before or after the towing makes no difference, in the opinion of this magistrate judge. The Supreme Court's rationale for requiring that inventory searches be conducted pursuant to a standardized procedure of the police department is to insure the officer's discretion is limited in determining whether to perform such a search. *See, South Dakota v. Opperman*, 428 U.S. 364, 372 (1976). Failing to notify Hertz Corporation of the towing and impoundment of its

10

vehicle was a violation of General Order 500.51 ¶ 5(4). The violation of that General Order, however, does not constitute a violation of the Fourth Amendment. To be sure, Hertz might complain of the loss of its car for a period of time, but what prejudice have these defendants suffered? The purpose of an inventory search "is a routine administrative care taking function," *Bertine*, 479 U.S. at 741. The standardized procedure required by the Supreme Court is to insure that an officer does not use an inventory search as a subterfuge to conduct a search for evidence of criminal activity, and that definitely did not occur in this case. Officer Davidson conducted his inventory search pursuant to the standardized procedures of the Morristown Police Department. His failure to notify Hertz as required by General Order 500.51 was of no constitutional significance.

There is a Sixth Circuit case that is on point. In *United States v. Vite-Espinoza*, 342 F.3d 462 (6th Cir. 2003), the defendant moved to suppress evidenced that had been seized from his vehicle during a warrantless search. The district court denied the defendant's motion to suppress on the basis that the evidence would have been inevitably discovered because the truck was subject to impoundment and an inventory search under a state statute, Tenn. Code Ann. § 55-16-104. This statute authorizes a police department to impound any abandoned, immobile, or unattended vehicle.

The defendant appealed, arguing that the Tennessee Supreme Court in *Drinkard v. State*, 584 S.W.2d 650 (Tenn. 1979), held that the driver of a vehicle, *even if arrested*, must be given the opportunity to make his "own arrangements" for the custody of the vehicle. Since the driver in *Vite-Espinoza* had not been given this opportunity, Tennessee law as

11

enunciated in *Drinkard* was violated. Therefore, so the defendant argued, any impoundment and inventory search also violated the Fourth Amendment to the United States Constitution.

The Sixth Circuit held that:

> [t]he federal constitutional basis of *Drinkard* has been overruled. In the absence of a showing that police acted in bad faith or for the sole purpose of investigation, evidence discovered during the investigatory search of arrestee's car is admissible. *Colorado v. Bertine*, 479 U.S. 367, 372-73, 107 S.Ct. 738, 93 L.Ed.2d 739 (1987). "[R]easonable police regulations relating to inventory procedures administered in good faith satisfied a Fourth Amendment, even though courts might as a matter of hindsight be able to devise equally reasonable rules requiring a different procedure." *Id.* at 374, 107 S.Ct. 738.

342 F.3d at 470.

> We conclude that in circumstances such as the present, where there was no violation of the United States Constitution, that there may have been a violation of a state constitution, the appropriate remedy is a civil action in state court, not evidentiary exclusion in federal court. The exclusionary "rule is a judicially created remedy designed to safeguard *Fourth Amendment rights* generally through its deterrent effect." *United States v. Calandra*, 414 U.S. 338, 348, 94 S.Ct. 613, 38 L.Ed.2d 561 (1974) (emphasis added). The rule does not protect against violations of state constitutional rights.

*Id.*, at 471.

In *Vite-Espinoza,* there was a violation of the state law upon which the impoundment and inventory search was (or would have been) based. In the case before this court, there was a minor violation of the written procedure which the Morristown Police Department used to impound the vehicle. The violations, although factually different, are legally analogous. There was no bad faith in the Morristown Police Department's failure to notify Hertz. The impoundment and inventory search was not for the sole purpose of investigation.

12

The exclusion of this evidence would accomplish nothing.

*THE CREDIT, DEBIT AND GIFT CARDS*

Officer Davidson's search revealed a number of cell phones and a total of eighty-six credit, debit, and gift cards.[10]

The cards were delivered to a detective at the Morristown Police Department, who in turn contacted Special Agent Kevin Kimbrough of the Tennessee Highway Patrol who is a specialist in credit card fraud and related crimes. Using a "reader," which is a scanning device used to read the electronic data encoded in the magnetic strip on the rear of the cards, Kimbrough discovered that the encoded numbers on the magnetic strip did not match the embossed numbers on the face of the cards. In other words, the magnetic strips had been fraudulently re-encoded.

Kimbrough freely acknowledged that he did not seek a warrant to perform this operation on the cards, nor did he believe that a warrant was necessary. The court agrees with Agent Kimbrough. An owner or possessor of a credit, debit, or gift card has no reasonable expectation of privacy in the data encoded on the magnetic strip on a credit card. After all, when a person swipes a credit card at a retail establishment or turns that card over to a merchant who in turn swipes it for the customer, the possessor of that credit card is freely giving to that merchant access to the digital data on the magnetic strip. That data is

---

[10]Four credit cards were removed from Bah's wallet after he was arrested and taken to the police station. Although the removal of the cards from Bah's wallet was barely touched upon at the hearing, it nevertheless is noted that this was a valid inventory search pursuant to the department's General Order 200.04B, ¶L(1), filed as Exhibit 4.

13

essentially the same data that is on the face of the card; it contains no "personal information" of the card's owner.

It is extremely doubtful that swiping these cards as Kimbrough did could be characterized as a "search." Kimbrough referred to what he did as a "retrieval of data," which is what occurs every time a card is used to purchase goods. Nevertheless, even it was a search, to have standing to challenge the legality of the search under the Fourth Amendment, the defendant must have a "reasonable expectation of privacy" in the place or thing to be searched. *Rakas v. Illinois*, 439 U.S. 128, 143 (1978). As stated above, a person can have no reasonable expectation of privacy in a credit card, the purpose of which is to impart to others the same information that was retrieved by Kimbrough. Defendants' argument is completely meritless. *See, United States v. Alabi*, 2013 WL 1876791 (D.N.Mex. 2013).

*THE CELL PHONES*

During his inventory search of the car, Officer Davidson also saw and seized four cellular telephones, one of which was a Blackberry with a cracked screen. Detective Tracy Bowman of the Morristown Police Department inspected the phones. Of the four phones, three were "locked," and required the entry of a security code before they could be unlocked and used or viewed. The Blackberry with the cracked screen, however, was unlocked, and Detective Bowman activated the phone. He looked at several photographs on the phone, several of which were extremely incriminating as far as the defendant Bah is concerned, particularly a photograph of a "skimmer," which is a device used to re-encode credit cards.

14

Defendants argue that looking at the photographs, and perhaps reading text messages, was a search of the contents of the cell phone and required a warrant. There is a split of authority on this issue. The first Circuit holds that the police may not search the contents of a cell phone without first obtaining a search warrant, *United States v. Wurie*, __ F.3d __ 2013 WL 2129119 (1st Cir. 2013). The Fifth and Seventh Circuits have held that a cell phone in the possession of an arrestee may be searched by the police without a warrant as incidental to the arrest; *see, United States v. Finley*, 477 F.3d 250 (5th Cir. 2007), and *United States v. Ortiz*, 84 F.3d 977 (7th Cir. 1996). The Sixth Circuit has not yet addressed the issue.

If it be assumed that a warrant is required to search and retrieve the contents of a cell phone, that ultimately was done in this case. Special Agent Douglas Allen of the Secret Service submitted an application to this court for a warrant to search the phones.[11] No where in his supporting affidavit does Special Agent Allen mention what Detective Bowman saw on the Blackberry phone. It follows that the magistrate judge of this court, to whom Allen's application was presented, was unaware of what Detective Bowman had seen on the Blackberry cell phone. This court determined that Allen's affidavit established probable cause to authorize a search of the cell phones, and a warrant was issued.

Recognizing that Special Agent Allen's affidavit did not mention anything Bowman had observed on the Blackberry phone, defendants argue that "but for" Bowman's

---

[11]Doc. 17.

observation of incriminating evidence on that one cell phone, no one would have thought it necessary to obtain a warrant to search the phones. For one thing, that is an unwarranted inference. Secondly, defendants cite no authority for this proposition. If Agent Allen knew what Detective Bowman had seen on the Blackberry phone, he did not impart that information to the magistrate judge in his affidavit. That affidavit established probable cause, and that ends the matter.[12]

*HARVEY'S STANDING TO CONTEST ANY ASPECT OF THE SEARCH*

In the opinion of this magistrate judge, the search of the car was constitutional. Further, neither defendant had any expectation of privacy in the credit, debit, and gift cards that triggered the application of the Fourth Amendment even if swiping those cards could be characterized as a "search." Therefore, the issue of Harvey's "standing" to contest the validity of the searches is a moot question. Nevertheless, in recognition that other judges at various times will consider all these matters, out of an abundance of caution Harvey's standing is now discussed, albeit briefly.

Although the United States did not raise Harvey's standing, the court did so on its own accord. Harvey's attorney argued that his client had standing on the basis of *Brendlin v. California*, 551 U.S. 249 (2007).

In reliance on *Rakas v. Illinois, supra*, many courts have held over the years that a passenger in a vehicle had no expectation of privacy to contest a search of the vehicle in

---

[12]The defendants did not argue in their motion that Allen's affidavit failed to state probable cause.

which that passenger was riding after it was stopped. In *Brendlin*, the Supreme Court held that a passenger is "seized" for Fourth Amendment purposes and therefore may contest the legality of a stop and any search that flows from that stop. What *Brendlin* does not say is whether a passenger may contest a search that was the result of a *lawful* stop of the vehicle. Most courts have concluded that *Brendlin* does not change the widespread rule that a passenger has no standing to contest a search of a vehicle that has been lawfully stopped. In other words, under *Brendlin*, a passenger may contest the legality of the stop and, if the stop indeed is illegal, only then may the passenger contest the search and seizure that ensued from that unlawful search. *See, e.g., United States v. Ghoston*, and cases cited therein, 2012 WL 1391967 (W.D. Tenn. 2012).[13]

Mr. Harvey was merely a passenger in a rented vehicle. Under *Brendlin*, he could contest the legality of Officer Davidson's stop of the vehicle in which he was riding. However, neither Harvey nor his driver, Bah, ever contested the legality of the stop; after all, Bah was driving at twenty miles per hour over the speed limit. Rather, Harvey chose only to contest the ensuing search, and in the opinion of this magistrate judge, he has no standing to do so.

*RECOMMENDATION*

It is respectfully recommended that defendants' motions to suppress, (Docs. 20 and

---

[13]*See also: United States v. McCalebb-Pippens*, 2010 WL 2927412 (E.D. Tenn. 2010); *Hollins v. Timmerman-Cooper*, 2013 WL 1908309 (N.D. Ohio 2013) ("no other court has extended *Brendlin* to hold that a passenger in a vehicle has standing to challenge a search of that vehicle.")

17

21) be denied.[14]

    Respectfully submitted,

                                                s/ Dennis H. Inman
                                       United States Magistrate Judge

---

[14] Any objections to this report and recommendation must be filed within fourteen (14) days of its service or further appeal will be waived. 28 U.S.C. § 636(b)(1).